**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **CLINTON MEAD,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:16-CV-0791-L |
| | § | |
| **LATTIMORE MATERIALS** | § | |
| **COMPANY AND HOLCIM** | § | |
| **LAFARGE,** | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendants' Motion for Summary Judgment (Doc. 25), filed March 17, 2017. After careful consideration of the motion, response, reply, appendixes, record, and applicable law, the court **grants in part** and **denies in part** Defendants' Motion for Summary Judgment (Doc. 25).

## I.      Procedural and Factual Background

Plaintiff Clinton Mead ("Mead") brings this action against his former employer, Lattimore Materials Company and Holcim LaFarge ("Defendants"),[1] alleging discrimination, retaliation, and interference claims under the Family Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.* ("FMLA"); and (2) disability discrimination in violation of Chapter 21 of the Texas Labor Code, Tex. Lab. Code Ann. § 21.001, *et seq.* (West 2015). *See* Pl.'s First Am. Compl. (Doc. 12).

---

[1] The relationship between Lattimore Materials Company and Holcim Lafarge is not entirely clear from the pleadings. Defendants assert that "Lattimore Materials Company is an assumed name for LafargeHolcim Inc." Defs.' Summ. J. Br. 1 n.1 (Doc. 26). At this juncture, for purposes of clarity, when the parties refer to the two entities collectively as "Defendants," the court will similarly use the term "Defendants." This issue needs to be resolved prior to resolution or trial of this action.

On March 17, 2017, Defendants filed a motion for summary judgment seeking dismissal of all Mead's claims. The court now sets forth the facts in accordance with the standard in Section II of this opinion.

## A. Mead's Employment as a Ready Mix Truck Driver

On or around July 7, 1997, Mead began his employment with Defendant Lattimore Materials Company ("Lattimore") as a truck driver. Mead drove a Ready Mix concrete truck containing ready mix cement and delivered cement to Lattimore's customers. As a Ready Mix truck driver, Mead was required to drive long distances, maneuver the truck to deliver and pour the cement, and perform tasks required to maintain the truck. Ready Mix truck drivers were required to be medically certified in accordance with the United States Department of Transportation ("DOT") regulations to ensure their continuing ability to safely operate the truck. Lattimore notified Mead each year when it was time for him to obtain medical recertification. Ready Mix truck drivers were required to provide information concerning medical history, medical conditions, and any medications taken, on a Medical Examination Report for Commercial Driver Fitness Determination ("Medical Examination Report"). They were also required to sign the Medical Examination Report certifying that the information provided was true and accurate. A doctor, designated by Lattimore, would review the information provided by the driver, perform a physical examination, and determine whether the driver met the standards to be recertified to safely perform his or her duties.

## B. Mead's Diagnosis of Osteoporosis

In 2011, Mead was diagnosed with osteoporosis in both hands. The osteoporosis caused him to experience pain in both hands. He testified at his deposition that either thumb may "lock up," preventing him from moving his hand or gripping an object. Defs.' Summ J. App. 22, 32.

He further testified that his thumbs have locked while he was working, specifically when "[g]rabbing the steering wheel, opening a bathroom – opening a door, going to the restroom." *Id.* at 33. Mead also testified that the pain did "not quite" stop him from being able to drive the truck, but there have been times when "it was close." *Id.* at 22. Mead's medical records show he has been prescribed numerous medications throughout the years to treat his osteoporosis and other ailments, including Tylenol, Hydrocodone, Ultram, Advil, Xanax, Ibuprofen, Tramadol, Norco, Steroid dose packs, Zanaflex, Tramadol, Phentermine, Hyzaar, and Valium. *Id.* at 14, 18, 23, 48, 54, 143-65. Mead did not list all the medications that he was taking on his annual Medical Examination Reports.

### C. Mead's Requests for Intermittent FMLA Leave

Beginning in October 2014, Mead applied for and was granted FMLA leave. In March 2015, Mead was on short-term disability for a preexisting condition of hand and shoulder pain. Cigna, Defendants' FMLA administrator, provided him an intermittent leave of absence from March 13, 2015, to March 16, 2015. Mead sought care with his primary care doctor, John Connolly, M.D., and provided a doctor's note to his employer. Mead returned to work on March 16, 2015. On June 19, 2015, Mead went to the emergency room for exhaustion, dehydration, high blood pressure, and ligament tears in both wrists. He was referred to an orthopedic surgeon for surgery and for a follow-up visit to his primary care doctor on June 26, 2015. On June 26, 2015, Mead applied for intermittent FMLA leave to attend doctor appointments. That same day, Cigna sent Mead a letter informing him that he was eligible for the requested leave but that a final determination would be made after receipt of required information from his physician. On July 17, 2015, Cigna approved Mead for intermittent FMLA "self-care" leave for "eight hours three times every month for office visits" retrospectively from March 13, 2015, to September 12, 2015.

*Id.* at 171-72.   On September 8, 2015, Cigna extended Mead's intermittent FMLA leave until March 2016.  Pl.'s Summ. J. App. 132.  On August 17, 2015, Mead took and passed a DOT medical examination, which recited that "due to High Blood Pressure," he qualified for only a three-month certificate.  Defs.' Summ. J. App. 142.

### D.    Mead's Suspension

On August 28, 2015, a Friday, Mead experienced a sharp pain when his thumb locked up after he jammed it while reaching for a ticket tube at Lattimore's Royse City Plant.   The pain continued throughout the day.   The next morning, when Mead discovered his hand was swollen, he contacted his supervisor, Andy Such ("Such"), and informed him that his hand was swollen and he needed to go to the emergency room.   Mead did not return to work after leaving the emergency room.   Mead returned to work on Monday, August 31, 2015.   That morning, Such and Doug Smith ("Smith"), a production supervisor, questioned Mead about his absence from work on Saturday. Such and Smith then sent summaries of their interview with Mead to human resources officer Katina McIntosh ("McIntosh"), informing her that Mead told them he had injured his thumb when reaching for the ticket tube at the Royse City Plant.   At the end of that day, Defendants suspended Mead without pay for failure to report a work-related injury.   Mead acknowledges that he was aware that Defendants required truck drivers to immediately report work-related injuries.   The record contains no evidence that Defendants filed any notice with the Texas Workforce Commission pertaining to Mead's injury.

During his suspension, McIntosh interviewed Mead, who informed her that he did not consider the August 28 incident a work-related injury because it was a recurring medical condition. In his Affidavit filed in support of his response brief, Mead testifies: "I didn't have a work[-]related injury.   I had a pre-existing condition from defending myself in a fight on June 8, 2012."   Pl.'s

Summ J. App. 132.  McIntosh ordered Mead to report for another DOT medical examination, which he took and passed on September 9, 2015.

During Mead's suspension, McIntosh decided on her own to review Mead's previous Medical Examination Reports to determine if he had disclosed any preexisting injury to his hand. During her review, she discovered that Mead did not disclose any medical condition relating to his hands in certain Medical Examination Reports, notwithstanding that each Medical Examination Report contained a question asking whether the driver had a "missing or impaired hand, arm, foot, leg, finger, toe[.]"  *Id.* Defs.' Summ. J. App. 90-142.  Mead checked "no" while certifying that his answers were "complete and true."  *Id.* at 12-13, 63-65, 90-142.

### E.    Lattimore's Policy

The Lattimore Employee Handbook ("Handbook"), under "Employee Conduct and Disciplinary Action," defines "unacceptable activities" as "[w]illfully falsifying or misrepresenting information on an application for employment, accident/incident report, or other work record[.]"  *Id.* at 178-179.  Participating in an unacceptable activity "may result in immediate termination of employment without warning."  *Id.* at 179.  Mead was provided with a copy of the Handbook and required to sign the acknowledgment form stating he had received copies of all revisions to the Handbook.

### F.    Mead's Termination

A three-person human resources committee comprised of McIntosh, Bob Winningham and Pat Lane determined that Mead should be terminated for failing to disclose his hand condition and his medications on certain of his Medical Examination Reports, as this constituted falsifying work records, a terminable offense under the "Employee Conduct and Disciplinary Action" section of the Handbook.   On September 15, 2015, McIntosh contacted Mead and notified him of his

termination. After his termination, Mead obtained a similar position at Charley's Concrete, where he continues to work without problems.

### G. Mead's EEOC Charge and This Lawsuit

Mead filed a charge of disability discrimination with the Equal Employment Opportunity Commission ("EEOC"). The EEOC issued him a right-to-sue letter on February 3, 2016. On February 24, 2016, Mead filed this action in the 44th Judicial District Court of Dallas County. On March 21, 2016, Defendants removed the case to this court pursuant to 28 U.S.C. § 1441. On June 20, 2016, Mead filed his First Amended Complaint, the live pleading, alleging discrimination, retaliation, and interference claims under the FMLA, and disability discrimination under Chapter 21 of the Texas Labor Code. Mead seeks actual, compensatory, and exemplary damages, as well as reinstatement, attorney's fees, and costs. On March 17, 2017, Defendants filed their motion for summary judgment seeking dismissal of all Mead's claims.

## II. Motion for Summary Judgment Standard

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment.

*Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir. 1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are

"irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

**III.    Analysis**

**A.    Mead's FMLA Claims**

The FMLA allows eligible employees to take up to twelve weeks of leave in any one-year period to address an employee's serious health condition or that of a family member. 29 U.S.C. § 2612(a)(1)(C), (D). Leave taken under the FMLA to care for a family member is often labeled "family-care" leave, and leave taken to address an employee's health condition is frequently referred to as "self-care" leave. *Coleman v. Court of Appeals of Md.*, 566 U.S. 30, 34 (2012). The FMLA creates a private right of action for equitable relief and damages "against any employer (including a public agency) in any Federal or State court." 29 U.S.C. § 2617(a)(2). Mead's FMLA claims relate only to "self-care" leave.

"Employers subject to the FMLA must comply with two separate 'prohibited acts' provisions found in Section 2615(a) of the FMLA." *Bryant v. Texas Dep't of Aging & Disability Servs.*, 781 F.3d 764, 768 (5th Cir. 2015). As summarized in *Bryant*:

Section 2615(a)(1) provides: "It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." Subchapter 2615(a)(2) provides: "It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."

This court has, at times, classified claims brought under Section 2615(a)(1) as "prescriptive" and claims under 2615(a)(2) as "proscriptive." *See Cuellar v. Keppel Amfels, L.L.C.*, 731 F.3d 342, 349 n.2 (5th Cir. 2013) (Elrod, J., concurring) (collecting cases). At other times, this court has labeled the claims "interference" and "retaliation" claims. *See id.*

*Id.* The prescriptive provisions "create[ ] a series of entitlements or substantive rights," while the proscriptive provisions "protect[ ] employees from retaliation or discrimination for exercising their rights under the FMLA." *Mauder v. Metropolitan Transit Auth. of Harris Cty., Tex.*, 446 F.3d 574, 580 (5th Cir. 2006) (citation omitted).

Mead asserts that he was fired because Defendants became concerned with the "nature and extent of the intermittent FMLA leave granted [him] by Defendants' administrator, Cigna, and the increasing severity of [his] arthritic flare[-]ups, and decided to get rid of him rather than accommodate his need for occasional intermittent doctor visits, despite almost 20 years of loyal service." Compl. ¶ 1.04. He also contends that Defendants' actions were designed to and did unlawfully interfere with his rights under the FMLA. Mead alleges that "[a]s a result of the interference, discrimination, and retaliation by Defendants, which were motivating factors in [his] discharge, [he] suffered significant financial loss, and the loss of benefits of his employment, including health insurance." *Id.* ¶ 5.04.

Defendants argue they are entitled to summary judgment on Mead's FMLA claims because he cannot establish:

> (1) a *prima facie* case of unlawful discrimination under the FMLA and even if he could, he cannot establish that Defendants' reasons for his discharge were a pretext for unlawful discrimination;
>
> (2) a *prima facie* case of unlawful retaliation under FMLA, and even if he could, he cannot establish that Defendants' reasons for his discharge were a pretext for unlawful retaliation; [or]
>
> (3) a *prima facie* case that Defendants interfered with his rights to take an FMLA leave[.]

Defs.' Summ. J. Br. 1 (Doc. 26). As Mead is bringing claims under both the prescriptive and proscriptive provisions of the FMLA, and the court examines them separately.

1.       **Violations of Proscriptive Provisions of FMLA (Mead's Discrimination and Retaliation Claims)**

Mead brings a claim against Defendants for discrimination and retaliation in violation of the FMLA's proscriptive provisions. Given that Mead has presented no direct evidence, the court determines that this is an indirect evidence case. Generally, the *McDonnell Douglas* burden-shifting framework applies to determine whether an employer terminated an employee in retaliation for exercising FMLA rights. *See Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 768 (5th Cir. 2001); *see generally McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Under this framework, the employee must first meet his burden of establishing a prima facie case of discrimination and retaliation. *Hunt*, 277 F.3d at 768. If the employee succeeds in making a prima facie case, the burden of production (though not persuasion) shifts to the employer to "articulate a legitimate, nondiscriminatory or nonretaliatory reason" for its action. *Id.* If the employer does this, the burden swings back to the employee to produce evidence sufficient to support a finding by a preponderance of the evidence that the employer's reason for its conduct is a pretext for discrimination or retaliation. *Id.*; *Augusten v. Vermillion Parish Sch. Bd.*, 249 F.3d 400, 403 (5th Cir. 2001).

Here, a modified *McDonnell Douglas* mixed-motive framework applies because Mead alleges that FMLA discrimination was a motivating factor in his termination, rather than the sole reason for it. *See Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 333 (5th Cir. 2005) (holding that the modified *McDonnell Douglas* mixed-motive framework applies to FMLA claims in which an employee alleges that retaliatory animus was a motivating factor in an adverse employment action); *see generally Desert Palace, Inc. v. Costa*, 539 U.S. 90, 101-02 (2003). The mixed-motive framework modifies the third step in the standard *McDonnell Douglas* framework by allowing an employee to avoid summary judgment by offering sufficient evidence to create a genuine dispute

of material fact "either that (a) the employer's proffered reason is a pretext for discrimination, or—and herein lies the modifying distinction—(b) that the employer's reason, although true, is but one of the reasons for its conduct, another of which was discrimination." *Richardson*, 434 F.3d at 333. "If the employee proves that discrimination was *a* motivating factor in the employment decision, the burden again shifts to the employer, this time to prove that it would have taken the same action despite the discriminatory animus." *Id.* (original emphasis).[2]

### a.    Prima Facie Case

To make out a prima facie case of retaliation under the FMLA, Mead must present evidence that "(1) he was protected under the FMLA, (2) he suffered an adverse employment action; and (3) the adverse action was taken because he sought protection under the FMLA." *Ion v. Chevron USA, Inc.*, 731 F.3d 379 (5th Cir. 2013) (citing *Mauder*, 446 F.3d at 583)).[3]  Defendants do not

---

[2] The court recognizes that the Supreme Court has limited the applicability of the mixed-motive framework in cases involving Title VII.  *See University of Texas Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338 (2013).  The Fifth Circuit has not yet determined whether the reasoning of *Nassar* applies to FMLA retaliation cases.  *See Wheat v. Florida Parish Juvenile Justice Comm'n*, 811 F.3d 702, 706 (5th Cir. 2016) ("Neither [the Fifth Circuit], nor the Supreme Court, has decided whether the heightened "but for" causation standard required for Title VII retaliation claims applies with equal force to FMLA retaliation claims.").  Defendants make no argument that the *Nassar* decision prevents a court from applying a mixed-motive analysis in an FMLA retaliation case.  In the absence of any argument or authority holding that *Nassar* applies to Mead's FMLA retaliation claims, the court, in keeping with other district courts in this division, applies the mixed-motive standard.  *See, e.g.*, *Cathcart v. YP Advert. & Publ'g LLC*, 2017 WL 4298135, at *4 (N.D. Tex. Sept. 27, 2017) (Lynn, C.J.) (allowing plaintiff bringing FMLA retaliation claim to proceed under mixed-motive standard because Fifth Circuit has not held otherwise and employer failed to argue otherwise);*Wojcik v. Costco Wholesale Corp.*, 2015 WL 1511093, at *11, n.20 (N.D. Tex. Apr. 2, 2015) (Fitzwater, J.) (assuming that plaintiff bringing FMLA retaliation claim can proceed under mixed-motive standard because Fifth Circuit has not held otherwise); *see also Mathis v. BDO USA, LLP*, 2014 WL 975706, at * 6 (S.D. Tex. March 12, 2014) (applying mixed-motive standard to FMLA case "until a higher court says otherwise").

[3] In *Mauder*, the Fifth Circuit stated that to establish a prima facie that he was fired in retaliation for his request to take leave, an employee must show the following: "1) he was protected under the FMLA; 2) he suffered an adverse employment action; and 3) he was treated less favorably than an employee who had not requested leave under the FMLA or the adverse decision was made because he sought protection under the FMLA." *Mauder v. Metropolitan Transit Auth. of Harris Cty., Tex.*, 446 F.3d 574, 583 (5th Cir. 2006) (citation omitted).

challenge that Mead was protected by the FMLA and suffered an adverse employment decision. They assert, however, that Mead cannot establish the third element of his prima facie case because he cannot show that he was terminated because he took FMLA leave.

"In evaluating whether the adverse employment action was causally related to the FMLA protection, the court shall consider the temporal proximity between the FMLA leave and the termination." *Mauder*, 446 F.3d at 583 (citation and internal quotation marks omitted). Further, an employee "does not have to show that the protected activity is the only cause of [his] termination." *Id.* (citation omitted). An employee, however, "is required to show that the protected activity and the adverse employment action are not completely unrelated." *Id.* (citing *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001)).[4]

Mead points to his approximately twenty-years of employment with Defendants, his lack of prior disciplinary problems, and the temporal proximity between his multiple leave requests in 2015 and his suspension and termination as evidence of a causal link. According to Mead, he "was employed by Defendants for close to 20 years as a cement truck driver. Only after [he] was granted FMLA leave beginning on March 13, 2015, which was extended on September 8 until March 2016, was [he] suspended without pay for alleged failure to report a work-related injury and discharged on September 15, 2015." Pl.'s Summ J. Resp. Br. 11 (internal citations omitted). Mead further notes that he was on FMLA leave when he was terminated.

Having considered the undisputed facts, the court concludes that Mead has sufficiently demonstrated the requisite causal link to satisfy the third element of his prima facie case. Otherwise stated, he has directed the court to sufficient evidence to show that his termination was

---

[4] Defendants erroneously assert that under M*auder*, "Plaintiff is required to show that the protected activity and the adverse employment action *are entirely related*." *See* Defs.' Summ J. Br. 11 (emphasis added). This is not the proper test. *See Mauder*, 446 F.3d at 583.

"not completely unrelated" to his exercise of his FMLA entitlements. *See Mauder*, 446 F.3d at 583. On June 26, 2015, Mead requested intermittent "self-care" leave under the FMLA from the period from March 13, 2015, through September 12, 2015. On July 17, 2015, Mead was granted the requested intermittent leave. It is undisputed that Mead was suspended on August 31, 2015, and discharged on September 15, 2015. On September 8, 2015, Mead's intermittent FMLA leave was extended to March 2016. Thus, Mead was terminated one week after his intermittent FMLA leave was extended. *See Grubb v. Southwest Airlines*, 296 F. App'x 383, 390 (5th Cir. 2008) (citing *Mauder*, 446 F.3d at 593) (emphasizing temporal proximity in the prima facie context). It is also undisputed that during Mead's approximately twenty-year career as a truck driver with Defendants, the record shows no disciplinary actions until he began to request intermittent "self-care" FMLA leave. Further, as noted by the Fifth Circuit, "As a prima facie element, this third prong is not an ultimate showing of liability, but merely determines whether there is enough evidence to require an employer to respond." *Id.* (citing *Burdine*, 450 U.S. at 253-54) (observing that the burden is "not onerous" and only creates a "presumption")).

*b.*      *Legitimate, Nondiscriminatory Reason for Termination*

The burden of production now shifts to Defendants to offer a legitimate, non-discriminatory reason for Mead's termination. Defendants assert they terminated Mead for failing to disclose a preexisting hand impairment and all his medications on certain of his Medical Exam Reports, which omission constituted falsifying work records, a terminable offense under the "Employee Conduct and Disciplinary Action" section of the Handbook. The court concludes that Defendants' explanation constitutes a legitimate, nondiscriminatory reason for Mead's termination. *See Rachid v. Jack in the Box*, 376 F.3d 305, 313 (5th Cir. 2004) ("[V]iolating a non-discriminatory company policy is adequate grounds for termination[.]"); *Mayberry v. Vought*

*Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995); W*atts v. L-3 Comm'ns Corp.*, 2013 WL 3789868, at *6 (N.D. Tex. July 22, 2013) (Fish, J.) ("A violation of a company policy is unquestionably a legitimate, nondiscriminatory reason for termination.") (collecting cases).

### c. *Motivating Factor*

In this third step, Mead "bears the burden of offering sufficient evidence to create a genuine dispute of material fact that [Defendants'] nondiscriminatory reasons, although true, are only some of the reasons for [their] conduct, another of which was discrimination." *Ion*, 731 F.3d at 391. In other words, Mead must offer evidence to show "that the exercise of his FMLA rights was a motivating factor in his termination." *Id.* While the presumption of discrimination is no longer operative once the employer meets its burden of production, "the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom" may still be considered "on the issue of whether the defendant's explanation is pretextual." *Reeves*, 530 U.S. at 143 (citation omitted).

Mead offers the following evidence: (1) Defendants required him to take multiple and duplicative medical examinations, notwithstanding that his previous certifications had not yet expired; (2) Defendants have no record of providing notice of his work-place injury to the Texas Workers' Compensation Commission, notwithstanding that they suspended him on August 31, 2015, for failure to report a work-related injury; (3) Based on advice from his physician, Dr. Connolly, Mead believed his hand pain was not a reportable impairment;[5] (4) Defendants' reasons for suspending him on August 31, 2015, and terminating him two weeks later, are inconsistent;

---

[5] With respect to Mead's osteoarthritis in his hands, Dr. Connolly testified: "If you can go to work and perform your duties and you're a little stiff and sore, I think that's part of any potential given job. Especially driving a cement truck. Almost every one of us if we live long enough, we will get . . . we will get some form of that [osteoarthritis], yes, very common." Pl.'s Summ. J. App. 92.

and (5) Even though Defendants had the ability to discipline him less severely, they chose to fire him for a first offense.

Drawing all reasonable inferences in favor of Mead, as the nonmoving party, and considering this evidence, in conjunction with the evidence already discussed above establishing his prima facie case, the court concludes that Mead has offered sufficient evidence from which a jury could reasonably conclude that Defendants were attempting to stop him from taking FMLA leave or to punish him for taking FMLA leave. That McIntosh took it upon herself to scour Mead's records after he was suspended to look for possible lapses in reporting could lead a reasonable juror to conclude that Defendants were looking for a reason to terminate Mead. Given the totality of the evidence, it is sufficient to raise a genuine dispute of material fact as to whether Mead's FMLA-protected leave was a motivating factor in Defendants' decision to terminate him. Accordingly, the court will deny Defendants' Motion for Summary Judgment as to Mead's FMLA discrimination and retaliation claims.

### 2. Violations of Prescriptive Provisions of FMLA (Mead's FMLA Interference Claim)

Mead also asserts a claim for FMLA interference. Under 29 U.S.C. § 2615(a)(1), an employer may not "interfere with, restrain, or deny the exercise of or the attempt to exercise" any right provided under the FMLA. 29 U.S.C. § 2615(a)(1). Once the right to the benefit is established, the employee is due the benefit, regardless of the intent of the employer. *Nero v. Indus. Molding Corp.*, 167 F.3d 921, 927 (5th Cir. 1999). To establish a prima facie case of interference under the FMLA, an employee must show that: (1) he was an eligible employee under the FMLA; (2) the employer was subject to the FMLA's requirements; (3) he was entitled to FMLA leave; (4) he gave notice to the employer of his intent to take FMLA leave; and (5) he was denied an entitlement under the FMLA, or the employer failed to respect the employee's FMLA

entitlements. Under the fifth element of the prima facie test, an employee must prove, or raise a genuine dispute of material fact, both that the employer interfered with, restrained, or denied him exercise of FMLA rights, and also that the employee was prejudiced by such violation. *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002) ("To prevail under the cause of action set out in § 2617, an employee must prove, as a threshold matter, that the employer violated § 2615 by interfering with, restraining, or denying his or her exercise of FMLA rights. Even then, § 2617 provides no relief unless the employee has been prejudiced by the violation . . . .").

Mead's sole contention in support of his FMLA interference claim is that Defendants demanded duplicative medical examinations. He has failed to establish, or raise a genuine dispute of material fact, however, that these examinations had any effect on his ability to exercise his FMLA benefits. Further, it is undisputed that all of Mead's FMLA requests were ultimately granted, and he cannot, therefore, demonstrate that he was denied an entitlement or was prejudiced under the FMLA. *See Ragsdale*, 535 U.S. at 89. Mead testified at his deposition that Defendants never prevented him from taking FMLA leave:

Q.    Okay. Was there ever an occasion when the company would not let you take off FMLA time to see a doctor?

A.    Not that I – that I can remember.

Q.    Okay. I mean, every time you needed to leave work to go see Dr. Connolly or anybody else, were you granted that time off?

A.    Yes, I believe I was.

Defs.' Summ J. App. 26-27.

The court concludes that Mead has failed to raise a genuine dispute of material fact to support his claim that Defendants interfered with his FMLA rights. Accordingly, Defendants are

entitled to judgment as a matter of law on Mead's FMLA interference claim, and the court will grant Defendants' Motion for Summary Judgment on this claim.

### B. Mead's Disability Discrimination Claim

Mead also brings a claim for disability discrimination under Chapter 21 of the Texas Labor Code. Tex. Lab. Code Ann. § 21.001, *et seq.* (West 2015). Section 21.051 of the Texas Labor Code prohibits discrimination in employment based on "race, color, disability, religion, sex, national origin, or age." *Id.* § 21.051. Mead alleges he was disabled because of osteoporosis in his thumbs, and that Defendants' decision to terminate him was motivated by his disability.

To establish a prima facie case of disability discrimination, a plaintiff must show that:

> (a) [he] is disabled, has a record of having a disability, or is regarded as disabled, (b) [he] is qualified for [his] job, (c) [he] was subjected to an adverse employment action on account of [his] disability or the perception of [his] disability, and (d) [he] was replaced by or treated less favorably than non-disabled employees.

*Drechsel v. Liberty Mut. Ins. Co.*, 695 F. App'x 793, 798 (5th Cir. 2017) (per curiam) (brackets in original) (quoting *EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 615 (5th Cir. 2009)).[6] As both the Texas Labor Code and the Americans with Disabilities Act ("ADA") prohibit disability discrimination, courts look to analogous federal precedent when interpreting the Texas Labor Code. *See NME Hosps., Inc. v. Rennels*, 944 S.W.2d 142, 144 (Tex. 1999); *Kiser v. Original, Inc.*, 32 S.W.3d 449, 452 (Tex.App.—Houston [14 Dist.] 2000, no pet.); *Rodriguez v.*

---

[6] The court notes that Texas courts of appeal have held that to establish a prima facie case of disability discrimination, a plaintiff must show (1) he has a disability; (2) he was qualified for the job; and (3) an adverse employment decision was made because of his disability. *See, e.g., Donaldson v. Texas Dep't of Aging & Disability Servs.*, 495 S.W.3d 421, 436-37 (Tex. App.—Houston [1st Dist.] 2016, pet. denied); *Texas Dep't of State Health Servs. v. Rockwood*, 468 S.W.3d 147, 156 (Tex. App.—San Antonio 2015, no pet.). As the outcome in this case is the same under either formulation, this court, like other courts in the Dallas Division, will assume that the four-element prima facie case set out in *Drechsel* applies. *See, e.g., Alviar v. Macy's Inc.*, 2017 WL 4698449, at *6 (N.D. Tex. Oct. 19, 2017) (Fitzwater, J.).

*ConAgra Grocery Prods. Co.*, 436 F.3d 468, 474-74 (5th Cir. 2006); *Troupe v. Cintas Corp.*, 2000 WL 1056327, at *2 (N.D. Tex. July 31, 2000) (Lynn, J.).[7]

A plaintiff bringing a state-law discrimination claim can prove discrimination through direct or circumstantial evidence. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 634 (Tex. 2012). When a plaintiff lacks direct evidence, as in this case, he can rely on circumstantial evidence using "the burden-shifting mechanism of *McDonnell Douglas*." *Id.* (citation omitted); *see also Machinchick v. PB Power, Inc.*, 398 F.3d 345, 356 (5th Cir. 2005) (confirming that "at summary judgment, the *McDonnell Douglas* burden-shifting analysis still applies to discrimination claims" brought under Texas's antidiscrimination laws).

As previously stated in connection with Mead's FMLA claims, the *McDonnell Douglas* framework consists of three stages. First, Mead must establish a prima facie case of discrimination, which "creates a presumption that [Defendants] unlawfully discriminated against [him]." *Burdine*, 450 U.S. at 254. If Mead establishes a prima facie case, Defendants must set forth a legitimate, nondiscriminatory reason for the employment action taken against him. *Machinchick*, 398 F.3d at 350.

It is in the next step that state law claims distinguish themselves from those brought under federal law. *See, e.g.*, *Arismendez v. Nightingale Home Health Care, Inc.*, 493 F.3d 602, 607 (5th Cir. 2007) (noting the difference). While a plaintiff must, for purposes of federal law, "establish

---

[7] The ADA was amended by the ADA Amendments Acts of 2008 ("ADAAA"), which took effect on January 1, 2009. 42 U.S.C. § 12101, *et seq.* The ADAAA made it "easier for people with disabilities to obtain protection under the ADA." *Weems v. Dallas Indep. Sch. Dist.*, 260 F. Supp. 3d 719, 727-28 (N.D. Tex. 2017) (Lindsay, J.) (quoting *Cannon v. Jacobs Field Servs. N. Am., Inc.*, 813 F.3d 586, 590 (5th Cir. 2016) (in turn quoting 29 C.F.R. § 1630.1(c)(4)). The amendments broadened the definition of "disability" by "construing the substantially limits standard in favor of broad coverage." *Cannon*, 813 F.3d at 590 (internal quotation marks omitted). The bottom line in a "post-amendment case is thus whether [plaintiff's] impairment substantially limits his ability 'to perform a major life activity as compared to most people in the general population.'" *Id.* at 591 (quoting 29 C.F.R. § 1630.2(j)(1)(ii)). To the extent either party relies on superseded provisions of the ADA in support of an argument, the court gives no weight to that argument.

by a preponderance of the evidence that the articulated reason was merely a pretext for unlawful discrimination," *McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 280 (5th Cir. 2000), Texas law allows a lesser showing.  On a state-law discrimination claim, a plaintiff can defeat a motion for summary judgment if he can show, or raise a genuine dispute of material fact, that, even if the defendant's stated reason is true, that another motivating factor was the protected characteristic. *See* Tex. Lab. Code Ann. § 21.125 (West 2015) ("Except as otherwise provided by this chapter, an unlawful employment practice is established when the complainant demonstrates that . . . disability was a motivating factor for an employment practice, even if other factors also motivated the practice."); *Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 480 (Tex. 2001) ("The plain meaning of [section 21.125 of the Texas Labor Code] establishes 'a motivating factor' as the plaintiff's standard of causation in a [section 21.051] unlawful employment practice claim, regardless of how many factors influenced the employment decision.").

In support of summary judgment on Mead's state-law disability discrimination claim, Defendants argue that Mead "cannot establish a prima facie case under the Texas Labor Code because (1) [he] does not have a 'disability' as defined by the Code; (2) [he] has no evidence that Defendants terminated him due to his alleged disability and (3) [he] was terminated because he falsified records, not a pretext for disability discrimination."  Defs.' Summ. J. Br. 18 (Doc. 26). Defendants further contend that, even assuming *arguendo* that Mead had met the elements of his prima facie case, he cannot establish that their proffered legitimate, nondiscriminatory reasoning for firing him was a pretext for unlawful intentional discrimination.  Defs.' Reply 10 (Doc. 33).

### 1.    Prima Facie Case

The court first addresses Defendants' contention that Mead has failed to establish that he was disabled within the meaning of section 21.002 of the Texas Labor Code, which is the first

element of his prima facie case. Section 21.002(6) of the Texas Labor Code defines "disability" as "a mental or physical impairment that substantially limits at least one major life activity of that individual, a record of such an impairment, or being regarded as having such an impairment." Tex. Lab. Code Ann. § 21.002(6) (West 2015). Similarly, a person is disabled under the ADA if he (1) has a physical or mental impairment that substantially limits one or more of the major life activities, (2) has a record of such impairment, or (3) is regarded as having such an impairment. 42 U.S.C. § 12102(2).

Mead appears to be advancing a claim that he has an impairment that substantially limits at least one major life activity, work, or that he was "regarded as" having such an impairment, but does not make any allegation or argument to support a claim that he has a record of such an impairment. Defendants contend that Mead has failed to establish that he either has an "impairment that substantially limits at least one major life activity" or was "regarded as" having such an impairment.

> a.   *Whether Mead Had, or Has, an "Impairment that Substantially Limits at Least One Major Life Activity"*

One of the stated purposes of the Texas Labor Code is to "provide for the execution of the policies embodied in Title I of the Americans with Disabilities Act of 1990 and its subsequent amendments." *Id.* § 21.001(3). Consistent with the federal regulations construing the ADA, Texas courts have found that major life activities include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Union Carbide Corp. v. Mayfield*, 66 S.W.3d 354 (Tex.App.—Corpus Christi 2001, no pet.) (citation omitted). The Code of Federal Regulations prescribes that the term "substantially limits" "shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA." 29 C.F.R. § 1630.2(j)(1)(i). In determining whether an individual is substantially limited in a major

life activity, Texas courts consider "(1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long-term impact, or the expected or long-term impact of or resulting from the impairment." *Union Carbide*, 66 S.W.3d at 360 (citation omitted).

Defendants contend that Mead has failed to establish that he has a mental or physical impairment that substantially limits at least one major life activity. The court agrees.

Mead asserts that his disability is osteoporosis, sometimes referred to as osteoarthritis, of his thumbs. Dr. Connolly, Mead's physician, testified at his deposition that Mead suffered from osteoarthritis of the thumbs, and that an x-ray report he reviewed stated: "Severe osteoarthritis at base of thumb." Pl.'s Summ. J. App. 82. Dr. Connolly further testified that Mead could experience "episodic flare-ups," which could "come and go." *Id.* at 85. Dr. Connolly testified that Mead told him that sometimes his hand pain would "slow him down at the job," thereby affecting his ability to do his job. *Id.* at 81. Dr. Connolly also testified that he never recommended that Mead "not perform his normal duties, because [Mead] never told [him] the pain got that bad." *Id.* at 91.

In response to questions from counsel for Defendants as to whether the osteoporosis in his thumbs prevented him from driving a truck, Mead stated that it does not interfere with his ability to drive a truck:

Q.     Your disability doesn't prevent you from driving a truck, which I think you indicated would be anywhere from 40 to 60 hours a week?

A.     20 to 65.

Q.     20 to 65. Is that correct?

A.     That's right.

Q.     Doesn't interfere with it?

A.    Correct.

Defs.' Summ. J. App. 17.  Mead further testified that his osteoporosis does not limit him: "Well, it doesn't prevent me from doing a lot of stuff.  It's just I deal with it."  *Id.*   He further testified that sometimes he has lingering pain in his hands all day, and this can stop him from pursuing certain hobbies, such as hunting and fishing.  *Id.* at 22.  When asked if he ever had to stop driving the truck because of pain, he stated: "Not quite, but - - but it was close."  *Id.*

Viewing all evidence in the light most favorable to Mead, and taking into account the ADAAA and its aim to broaden the definition of "disability," the court concludes that he has not established that he is "substantially limited" in his ability to work.  No evidence in the record suggests that Mead's impairment substantially limited his ability to perform the job he had with Defendants.  Further, as previously noted, Mead testified at his deposition that he could perform his duties and that his osteoporosis in his hands did not prevent him from doing his job. While he stated that sometimes he had pain all day, he testified that it did not stop him from working.

With regard to Dr. Connolly's testimony that Mead's osteoarthritis could cause "episodic flare-ups" that could interfere with his work abilities, the Fifth Circuit has held that intermittent flare-ups that are infrequent cannot be considered substantially limiting. *Waldrip v. General Electric Co.*, 325 F.3d 652, 656 (5th Cir. 2003) (holding that a plaintiff's chronic pancreatitis was not considered a "disability" because his occasional flare-ups were not substantially limiting). *Waldrip* involved a situation in which the plaintiff's doctor testified that, "at most, he occasionally must miss a few days of work when his chronic pancreatitis flares up."  *Id.* at 657.  In this case, the evidence similarly shows that any flare-ups were intermittent and episodic, and not frequent. Mead relies solely on the Fifth Circuit's decision in *Carmona v. Southwest Airlines* to support his claim that he was disabled.  604 F.3d 848 (5th Cir. 2010).  In *Carmona*, the court held that a

plaintiff's psoriatic arthritis rendered him disabled because it substantially interfered with his ability to walk. The court noted that the plaintiff was immobile during flare-ups, which were so frequent that he missed half of his working days each month. *Id.* at 857-58. The court in *Carmona* distinguished the *Waldrip* decision as follows:

> However, *Waldrip* involved a situation in which the plaintiff's doctor testified that, at most, he occasionally must miss a few days of work when his chronic pancreatitis flares up. The occasional flare-ups in *Waldrip* and the frequent, recurrent flare-ups that Carmona experiences are substantially different situations, though both could be described as intermittent. In *Waldrip*, the plaintiff's occasional flare-ups did not substantially limit any of his major life activities, because they were so few and far between. Carmona spends anywhere from about one-third to about one-half of each month unable to walk without excruciating pain. It would be difficult to argue that this does not substantially limit his ability to walk.

*Carmon*a, 604 F.3d at 858-59 (internal punctuation and citations omitted).[8]  As Defendants correctly argue, the summary judgment record makes this case much more analogous to *Waldrip* than to *Carmona*.  As such, the court finds *Carmona* distinguishable and, therefore, not persuasive on the record presented in this matter.

Having carefully considered Mead's deposition testimony, Dr. Connolly's opinion as to the impact of Mead's osteoarthritis, and the record, and viewing all evidence in the light most favorable to Mead, the court concludes that Mead has not provided sufficient evidence from which a reasonable jury could find that he was an individual with a "disability" within the meaning of the Texas Labor Code and ADA.  A reasonable jury could not conclude that Mead had, or has, an impairment that substantially limited his major life activity of working.

> b.      *Whether Defendants "Regarded" Mead as "Disabled"*

The ADA covers individuals who have been discriminated against because they are "regarded as having . . . an actual or perceived physical or mental impairment whether or not the

---

[8] Although *Waldrip* was decided prior to the ADAAA, it is relevant to the court's analysis, as the court in *Cardona*, upon which Mead relies heavily, goes to great lengths to distinguish *Waldrip* based on the facts.

impairment limits or is perceived to limit a major life activity." 42 U.S.C. §§ 12102(1)(C), 3(1)(A). A person, however, is not "regarded as" disabled if his or her impairment is "transitory and minor." 42 U.S.C. §§ 12102(1)(C), 3(1)(B). "A transitory impairment is an impairment with an actual or expected duration of 6 months or less." *Id.*

Mead's alternative theory for establishing that he is disabled appears to be that at the time Defendants fired him, they regarded him as having a physical impairment, not that he in fact had such an impairment. Defendants contend that Mead has failed to establish that he was "regarded as" having an impairment.

The record in this case does not raise a genuine dispute of material fact as to whether Mead was "regarded as" disabled. There is no evidence that Defendants perceived Mead as disabled. In his response to Defendants' Motion for Summary Judgment, Mead asserts that Defendants are "equitably estopped" from claiming he does not have a protected disability, and that it "is apparent" that Defendants "regarded" him as having a disability, because he was terminated for failing to disclose a preexisting condition involving osteoarthritis in his hands on certain Medical Examination Reports. *See* Pl.'s Summ. J. Resp. Br. 17-18 (Doc. 28). As Defendants note in their reply brief, Mead was terminated because of his failure to disclose health history information in the Medical Examination Reports, which included the omission of various medications he took and any impairment related to his hands. Termination for falsifying work records by failing to disclose medical history information in violation of company policy is not a concession that an employee has a "disability" as that term is defined under the Texas Labor Code and ADA. Because Mead cannot raise a genuine dispute of material fact as to whether he was disabled or "regarded as" disabled under section 21.002(6) of the Texas Labor Code or the ADA, Defendants' Motion for Summary Judgment on Mead's state law disability discrimination claim will be granted.

### 2. Motivating Factor

Even were the court to assume, *arguendo*, that Mead had established his prima facie case of disability discrimination, Defendants have set forth a legitimate, nondiscriminatory reason for his discharge, and there is simply insufficient evidence in the record to establish, or raise a genuine dispute of material fact, that Defendants' decision to terminate Mead's employment was motivated by his disability. Aside from his conclusive, speculative, and subjective belief, which is not competent summary judgment evidence, *see Forsythe* and *Eason*, *supra*, Mead presents nothing to support his claim of disability discrimination. Accordingly, in addition to granting summary judgment in favor of Defendants because Mead has failed to establish a prima facie case of disability discrimination, even if he had, the court would nevertheless grant Defendants' Motion for Summary Judgment because Mead has failed to raise a genuine dispute of material fact that his disability was a motivating factor in Defendants' decision to terminate his employment.

## IV. Conclusion

For the reasons stated herein, the court **grants in part** and **denies in part** Defendants' Motion for Summary Judgment (Doc. 25). Defendants' Motion for Summary Judgment is **granted** with respect to Mead's claim of interference under the FMLA and for disability discrimination under the Texas Labor Code. As Mead has failed to raise a genuine dispute of material fact as to these claims, they are hereby **dismissed with prejudice**. As genuine disputes of material fact remain for trial with respect to Mead's FMLA discrimination and retaliation claims, Defendants' Motion for Summary Judgment is **denied** as to these claims. The court will reset the trial of this case and pretrial deadlines by separate order.

**It is so ordered** this 9th day of February, 2018.

Sam A. Lindsay
United States District Judge